Your honors, may it please the court, Nell Pizer for appellants. And Ms. Pizer, you've reserved three minutes for rebuttal. You may proceed, your honor. The district court made two grave errors of law. First, it failed to confine its review of the ERISA benefit denials to the administrative record. Second, when it reviewed plan language, it didn't interpret the plans in accordance with their plain meaning. I'll start with the administrative record rule. Nothing is more firmly entrenched in this court's and every other court's ERISA jurisprudence than the administrative record rule. And a key part of that rule is limiting a court's review of a benefit denial to the stated denial rationale and what the administrator relied on to reach that denial rationale. An administrator can't justify benefit denials in litigation. But why wasn't this part of the administrative record for the general process claim? I mean, that's what the district court granted certification on, not individual errors. And what you're saying is this was not part of the administrative error record for individual errors, but that's not what this was about, is it? Or am I confused? Plaintiffs brought this claim under ERISA 502A1B, which is a claim for wrongful denial of benefits. And the district court granted class certification on plaintiff's 502A1B claim. The opinion in its legal standards section refers to ERISA 502A1B. One of plaintiff's legal theories was that United never reviewed plan terms, and that made the denials unreasonable. But the denials were based on lack of licensure, so the only question in terms of process was whether United reviewed the licensure plan terms. So I'm going to quickly mention some of that. So if it's licensure plan terms, then how does that meet class certification standards? What are the common issues as opposed to looking at the specific plan language? The common issue was whether United reviewed the licensure plan terms, the basis for the denial, when it imposed this blanket denial. So not what the terms said, but whether the terms were reviewed. That's correct. So that's a process claim. In an ERISA 502A1B case for wrongful denial of benefits, plan terms always matter. As the district court did in its opinion, it did review plan terms to get a sense of whether the denials were unreasonable. Although plaintiffs challenged United's process of reviewing plan terms, you cannot ignore what the plans say in their licensure provisions. But if there was a global determination made before the particular administrative, before the particular controversy arose, why would you expect the internal workings that led to this global policy determination to appear time and again in each administrative record? A bedrock principle of ERISA is that the denial letters have to state the reason for the denial and the plan provisions that support that denial. It is uniform in the circuit that an administrator can't justify denials based on new reasons developed or asserted for the first time in litigation. And that's what happened in this trial. So the only question in terms of process was United's process for reviewing those plan terms that were the basis of the denial that did not transform the case into a free-for-all about United's process. I'd like to quickly mention some background, none of which is disputed. Dr. Antell, one of the named plaintiffs, performed outpatient surgery in his OBS. An OBS is a full-blown surgical suite attached to the physician's office with the full suite of surgical equipment, supplies, ventilation, anesthesiologists, and nurses on staff. Before 2007, outpatient surgeries could only legally be performed in two settings in New York, ASCs and hospitals. ASCs are ambulatory surgery centers, both of which are regulated under Article 28 of the public health law. In 2007, the New York legislature dramatically changed the statutory scheme by enacting 230D, which permitted surgeons to perform outpatient surgeries in a third setting, OBSs. The legislature did this to encourage surgeries to be performed in OBSs, where there's a lower risk of infection than in crowded hospitals or ASCs. Every single outpatient surgery that could now be performed in a hospital or ASC could now also legally be performed in an OBS. But after the passage of 230D, United continued its process. But how is all this going to errors in process, which, as far as I can understand, is what the court granted sort of class certification? I mean, are you saying that there were enough individual errors so that the process must have been wrong? But I don't see you telling us how many of those there are. That is, I may be wrong, but reading your things, I think you really are trying to argue what the court did not grant certification on. Your Honor, our position is that the only portion of the process that mattered was whether United— I know that's your position, but what did the court grant certification on? The court granted certification on whether United reviewed plan terms in supporting its licensure-based denial rationale and whether that denial rationale was reasonable. Yes, there is the process claim, but it can be both, and it is both here. So as to the substantive reasonableness, as I understand it, there are some 29 individual plans that span the 31 claims here? That's correct. Do any of those plans expressly provide for treating an OBS as a facility? Your Honor, that exemplifies both legal errors that occurred here. No, no, no. It's a yes or no question. All of the plans in the class treat OBSs as a facility. The definition of alternate facility for almost every plan in the class is a health care facility that is not a hospital and that provides one or more of the following services on an outpatient basis as permitted by law. Judge Etchkin's decision says that none of the plans expressly provide for treating an OBS as a facility. That goes to the second legal error of not interpreting the plans in accordance with their plain meanings. Judge Etchkin relied on Medicare standards, Department of Health website, and what other payers do rather than the plain language of the plans. And in this circuit, it's well settled under any standard of review that ERISA plans must be interpreted in accordance with their plain meanings as would be understood by an average plan participant, not from the perspective of an industry insider. All right. Thank you, Counsel. You have reserved three minutes for rebuttal. Thank you, Your Honors. The other set. Good morning, Your Honors. May I please have support? Megan Vergao. Speak right. Apologies. It's okay, but it's not as loud as it usually is. Ms. Vergao, if you stand in the middle, actually. Is that actually better? It is better. Okay. I don't know why, but it's not as loud as yesterday. Thank you. I'm sorry. Is that better, Judge Calabresi? Much better. Wonderful. Thank you. Good morning. I'm Megan Vergao, appearing for. Let's restart the clock. Thank you. Go ahead. Judge Etkin below declined to certify a class of benefit claims on the ground that adjudicating benefit claims across the class would entail individualized considerations and review of individual plan terms. What Judge Etkin did certify was a class to consider the question whether United's processes for adjudicating claims for facility fees submitted by physician's offices were adequate. And a quote from the district court's class certification opinion at SPA 55, the court recognized that whether United's vetting, onboarding, and C-flagging processes actually involve the interpretation of plan terms in the ultimate decision to deny OBS facility fee claims presents a common question. I'm abbreviating there. But the court recognized that that sort of process question could be adjudicated on a class-wide basis, and the parties had a five-day trial to talk about that, to hear evidence about what United's processes are, to ensure, as the Department of Labor's claims processing regulation requires, that claims are adjudicated consistently with the governing plans and also consistently with each other. That's an important dimension of the claims processing regulation. You can't have ad hoc interpretations of plan terms every time you receive a claim because that could result in human error and inconsistent plan adjudications. In this way, I actually think the process claim is similar to the claim that this court considered in the Zervos case back in 2001. And Zervos was a case in which the claimant asserted that he was entitled to coverage of a particular benefit. And in that case, the claims administrator had a committee that convened, had convened before the plaintiff even filed their benefit, to consider the question, should this one cancer therapy be considered? And they considered a bunch of scientific evidence and considered medical evidence. And that plan committee concluded, no, in view of the evidence, we think that this particular type of treatment is not consistent with the terms of our interpretation that it's not covered. When the claimant came forward some months later to seek treatment, the administrator applied that interpretation to deny the treatment. And this court affirmed that decision on a record that included considerable testimonial and other evidence about the process that the administrator applied to discerning that plan interpretation. I have two questions. One, the Columbia plaintiffs originally were there as individuals making claims about individual error. Now, I take it they dropped out of that. They didn't quite. So there was a – I mean, because to the extent they are still in claiming individual, then we've got to – the other appellants can be arguing about individual error. My second question is, would you concede that if there were enough individual errors, that would go to a question of process? Those are great questions. The first is that Judge Etkin did reach the individual benefit claims brought by Columbia Eastside with consideration of the plan documents that applied to Columbia Eastside's claims. That's why there were plans in the record, and many of those plans were discussed ad nauseum in the trial below. There was a bit of a debate on United Move to decertify the class, and in connection with that, the plaintiffs disclaimed that there would need to be any individual consideration of plan terms, and also disclaimed that they would be pursuing their individual benefit claims. The benefit claims were reached ultimately, and Judge Etkin reasonably concluded, applying properly the arbitrary and capricious standard that United's interpretation of those plans was at least rational. Your Honor, second question is a good one. I think the court's decision in HALO discussing the claims processing regulation in the Department of Labor's FAQs there is instructive. A single inadvertent error does not reflect any deeper flaw in the claims adjudication process. I think I would have to concede that a pattern of repeated errors would suggest Do we have anything in this record suggesting a pattern? Has that been argued? I mean, I will ask that again in a way of opposing counsel when we come back. There is not in this record, and this is an issue that was presented to Judge Etkin, and notably appellants have not asserted any clear error in his findings about the sufficiency of United's process. Again, we had days and days of testimony of individuals testifying about the process here. I do want to correct one issue that I heard appellant's counsel rephrase today. I was surprised to hear it again today, given the trial evidence and given that appellant's counsel also attended trial. There has been an assertion here that somehow that surgery was not permitted in an office setting before 2007 and that it was newly permitted based on the 2007 law. That's simply not what the record reflects. There was testimony from the representative of the medical society, among others, who, and I can provide the citation, it's pages 196 and 197 of the appendix, in which Mr. Oster testified and recognized, yes, surgery had been performed in an office setting before 2007. What the 2007 law did was impose additional safety requirements to ensure that there was a modicum of supervision. May I just follow up on something that your adversary said? As I understand it, Judge Etkin found that of the plans actually at issue, none of them explicitly provided for treating an OBS as a facility. Your adversary says otherwise. Judge Etkin is absolutely right. Again, I don't think my adversary has come forward with any argument that his analysis of the plan documents that are in the record was clearly erroneous. Had a plan document been explicit on that point, what happens then to your policy? I think an individual benefit claim would be the way to vindicate that kind of problem. So if United, as the evidence at trial reflected, maintains the process of using template plan language and it has a whole department that receives requests for special deviations from the plan language so it can track when there is a plan that uses different language and monitor for material changes, and so if it happened that a plan slipped through and happened to explicitly require the payment of facility fees to offices, then that would be evidence that a mistake had been made in that case. It would not be a sign of a deeper and more profound problem with the process. But I want to emphasize that the plans here pretty robustly support United's interpretation of them, among other things, all of the certificates of coverage, which are manifestly within the class. It's another assertion I was surprised to see in the reply brief. Certificates of coverage fully insure plans absolutely are part of the class. They use language that is mandated by the Department of Financial Services, and the definition of facility in those plans explicitly refers to Article 28 certification. Can you just anchor this in the economics a little more? The briefs and Judge Etkin's decision suggest that there's sort of an apples and oranges to the compensation regimes where the OBSs get an extra dollop of compensation. While they don't get the facility fee, the doctor gets something called a practice expense. It's quite unclear to me, though, whether that, in fact, captures in some aggregated way the actual marginal cost here. This whole dispute is about how, not whether. So it's not whether outpatient surgery is covered. Outpatient surgery is covered. It's about how to reimburse outpatient surgery when it occurs in a physician's office setting. But you are not denying that it might be that the structure that what has been done is not a particularly good way of doing things. You're saying that's just not the case before us. We very much think it's a good way to do it. I know you do. It's the way Medicare does it. I know you do. But that isn't – if we disagree with you on that, you are still saying we should decide for you because that isn't the case we have. That's right. We're on arbitrary and capricious review if United's approach here is rationally consistent with the plan language it must be upheld. But this is very much a rational way of adjudicating these claims because the practice here is to adopt a global professional fee that includes reimbursement for practice expenses, overheads, surgical supplies, and so on. When outpatient surgery occurs in a physician's office setting, when it's in a facility setting, those fees are broken into distinct elements. A lower professional fee to the physician and a separate fee that's paid to the facility. It's a practice that has emerged over the past 20 plus years as outpatient surgery has become more common in a physician's office setting. Again, there was abundant trial evidence about that. And it's a practice that makes a lot of sense, not least because a physician has a license of the physician and it's the physician who is maintained. It's sort of a singular entity that is maintaining the setting for the outpatient surgery. The reason it's been broken out, when you have something occur in a hospital, you can have any number of providers cycling in and out and it makes sense to treat those differently. Thank you, Counsel. Thank you, Your Honor. We'll hear from Ms. Pizer who has three minutes for rebuttal. Can I just start off by asking your view on whether the individual claims are or are not abandoned? Your Honor, the record reflects that the individual claims are not abandoned. The district court ruled on them. There's nothing to suggest that the district court thought they were abandoned. United didn't cross appeal, that that was error. So the record reflects that they're not abandoned. And as to those individual claims, that goes to the second legal error. Not interpreting plans in accordance with their plain meanings. United's counsel just explained that there are certain plans that anchor payment of facility fees to Article 28. We've explicitly excluded those claims under those plans from the class. And if anything, that shows that if United wanted to exclude OBSs from receiving facility fees, it could have amended its plan language to those plans, yet it didn't. Here, as to whether the denials were unreasonable, United is limited to the stated denial rationale. And this court has clearly expressed that in Martin v. Hartford Life, which is at 478 Federal Appendix 695. The circuit held in a very simple three-page opinion that because an insurer denied a benefit claim based on X, it couldn't come in at trial and assert a denial reason based on Y. And in a really straightforward, short opinion, the district court remanded the case back to the district court to oversee the administrator reprocessing the claim. And that's exactly what we think should happen here. These claims were not denied on the grounds that the surgeons were receiving an enhanced professional fee in accordance with Medicare's practice.  to justify the denials, but it didn't. So United can't rely on that now under ERISA. I'd also like to quickly say in terms of process, here, in 2007, Section 230D authorized OBS surgery to be performed in New York, so it became regulated by New York State. The surgery, though, was being performed in OBSs beforehand, correct? Correct, but it was entirely unregulated. And a license is commonly understood as a formal governmental permission to perform a certain service. So before 2007, it would be reasonable for United to deem OBSs as not having that formal permission, but everything changed after 2007. But they're still doing the same things. Why does the fact of the passage of 230D change the essential character from being a non-facility to a facility? The denials were based on licensure. So post-230D takes OBSs from being unlicensed to being licensed. Under United's plans with their broad definition of facility, OBSs were always facilities. They have always checked every box of that definition. But the difference was licensure. So the only process that matters here is how United interpreted the plans after 230D. Thank you, Counsel. All right, we appreciate the arguments of both sides. The matter is submitted, and we take it under advisement.